B. FLETCHER, Circuit Judge,
dissenting.
I respectfully dissent. The guilt phase of Hayes’s trial should have been transferred out of Santa Cruz County because the considerable adverse pretrial publicity created a presumption of prejudice among the jury pool.
In Sheppard v. Maxwell, the Supreme Court held that due process requires a change of venue or a continuance when the defendant can show a “reasonable likelihood that prejudicial news prior to trial will prevent a fair trial.” 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). More specifically, because a criminal defendant has the right to an impartial jury, a court must grant a motion to change venue “if prejudicial pretrial publicity makes it impossible to seat an impartial jury.” Daniels v. Woodford, 428 F.3d 1181, 1210 (9th Cir.2005) (citation omitted). In the context of a petition for a writ of habeas corpus, the federal court must conduct “an independent review of the record to determine whether there was such a degree of prejudice against the petitioner that a fair trial was impossible.” Id. (citation omitted). In the recent case of Skilling v. United States, — U.S. -, 130 S.Ct. 2896, 2915-16, 177 L.Ed.2d 619 (2010), the Supreme Court focused on four issues in determining whether a presumption of jury prejudice was appropriate: (1) the size and characteristics of the community in which the crime occurred; (2) whether the information was “blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight”; (3) the time that elapsed between the height of media coverage and the trial; and (4) jury actions with respect to earlier prosecutions of similar or related crimes. Here, the majority recognizes that the first factor, or the size of the community in which the crime took place, weighs in favor of finding presumed prejudice. Maj. op. at 509.
As to the second factor, the majority characterizes the information contained in the pretrial publicity as “unflattering,” but concludes that this was not the type of vivid, unforgettable information that would warrant a change of venue. The majority mischaracterizes and significantly dilutes the shocking nature of the information and images to which the jury pool was exposed prior to the trial. The pretrial coverage included explicit pictures of the victims’ remains revealing the condition of the exhumed skulls and that the victims’ heads and hands had been chopped off. These images are well beyond merely “unflattering,” and constitute the type of shocking imagery that, once seen, would be impossible to forget. Indeed, the transcript of the voir dire reveals that many of the jurors specifically recalled hearing or reading pri- or to trial about the condition of the victims’ remains. If that is not enough, information was released revealing that Hayes *525 had been charged with two prior murders in other states. One of the articles discussing Hayes’s previous murder charges also described his stay at a mental hospital in Portland, Oregon.
The majority’s suggests that publicity amounting to a public confession such as that in Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) is the only sort of pretrial publicity that creates presumed prejudice. Certainly, the interrogation and confession at issue in Rideau had an undeniable effect on the defendant’s ability to receive a fair trial. See 373 U.S. at 727, 83 S.Ct. 1417. However, the majority’s suggestion is a far too narrow reading of the case. The proper focus of our inquiry is not on whether the publicity to which the jury was exposed is exactly the same as that in previous cases, but rather on whether it is the type that would stick in the minds of community members, rendering it impossible to assure an impartial verdict. See Daniels, 428 F.3d at 1210 (noting that the relevant inquiry is whether “there was such a degree of prejudice against the petitioner that a fair trial was impossible”). Indeed, Skilling does not limit prejudice from pretrial media exposure to filmed confessions, but rather acknowledges that there may be “other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight” or that could be “imprinted indelibly in the mind of anyone who watched it.” Skilling, 130 S.Ct. at 2916. Grotesque depictions and descriptions of victim body parts, combined with stories about the defendant’s criminal history and mental instability, are precisely the type of information that infiltrates the minds of community members so that they can no longer render a truly impartial decision based only on the evidence presented in the trial itself.[1]
With respect to factor three (elapsed time), the majority points out that the bulk of the pretrial publicity in this case was released only one to two years before voir dire. Notably, in both Skilling and Patton, cited by the majority to support its conclusion regarding the passage of time, four years had passed since the height of the adverse publicity before trial, or more than twice the amount of time here. 130 S.Ct. at 2916; Patton v. Yount, 467 U.S. 1025, 1032, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). The majority contends that Hayes failed to establish that “the publicity preceding his trial had a greater negative impact than that ... in Yount ”. Maj. op. at 510. However, the analysis ignores the fact that the primary reason that the publicity in Yount did not amount to a due process violation was because the passage of time (four years) rebutted “any presumption of partiality or prejudice.” Yount, 467 U.S. at 1033-35,104 S.Ct. 2885. A review of Yount makes clear that it was the passage of four years that blunted the memories of the perspective jurors and minimized the dangers of prejudicial exposure to pretrial media coverage.
By contrast, the transcript of the voir dire here reveals that the passage of only one or two years was insufficient to erase *526 the taint that had spread throughout this small community from the sensational media coverage of the case. In addition, in arguing the venue issue before the lower court, defense counsel made the judge aware of the results of an informal survey taken among the members of the Santa Cruz County community, which revealed that 71% of the community members had read something about the case prior to voir dire. In other words, despite the passage of time, on the first day of trial nearly three-fourths of the members of the community recalled something about the case from previous media exposure. Undoubtedly, an even greater proportion had their memories of the gruesome details triggered by the testimony and facts that would be revealed over the course of the trial. These memories could be nothing short of prejudicial. The trial judge, however, gave almost no consideration to the telling results of this survey.
As to the final Skilling factor, we have not been presented with sufficient information to usefully assess prior jury decisions with respect to similar crimes. It is interesting to note, however, that, near the time Hayes originally moved for a change of venue, four other homicide cases were transferred from Santa Cruz County, this very county, to other counties based upon the community’s exposure to media coverage.
I respectfully dissent. I would grant Hayes’s habeas petition on the grounds that the lower court’s failure to grant his motion for change of venue violated his right to an impartial jury and to due process of law.

. Careful attention should be paid to two disturbing facts. The trial court granted Hayes's motion for change of venue for the penalty phase of the trial, although it denied the motion at the guilt phase. The transcript reveals that the trial judge admitted that he took cost into consideration in making his first ruling. Second, he stated on the record his support for a pending bill that would not allow motions for change of venue to be granted until after voir dire. The trial judge blatantly and openly considered costs and other political issues in ruling upon the motion for change of venue. In the face of overwhelming evidence indicating that the jury was tainted by previous media exposure, he considered costs to the court to be more important.